## STEARNS vs. BURNHAM.

Where one of two copartners, after the dissolution of the partnership, gave a note in the name of the firm, for his own private debt, the creditor knowing that the partnership was dissolved ; and this note being afterwards sued, and the party who made it having become bankrupt, the other partner compromised the suit by giving his own note for half the debt and all the cost; part of which note he afterwards voluntarily paid ;—it was held that the making and acceptance of the first note was a fraud upon the absent partner, and that the second note was therefore void.

*Assumpsit* on a promissory note, made by the defendant *Nov.* 6, 1802, payable on demand, to *William Stearns*, since deceased, and indorsed by his executrix to the plaintiff. The pleas were the general issue, and the statute of limitations.

To prove a new promise, the plaintiff offered the depositions of two persons, to whom legacies, of one dollar each, still unpaid, were given by the will of the testator ; and the depositions on that account were objected to ; but it being proved that the assets amounted to more than eighty thousand dollars, and no doubt suggested of the solvency of the estate, the Chief Justice, before whom the cause was tried, admitted the depositions.

It appeared that the defendant and one *Fairfield* were partners in trade from *Nov.* 1797 to *Aug.* 5 1799, at which time the dissolution of their partnership was regularly published. At this time they owed the testator $311,11 which *Fairfield* soon afterwards paid, informing him that the partnership was dissolved. In *November* following, *Fairfield* gave the testator another note, for a private debt of his own, but signed it with the name of the former firm of *Fairfield* and *Burnham*. This note being put in suit, the action was contested by the defendant, but before trial, it was compromised, so far as he was concerned, by his giving the note which is now in controversy, for one half the sum claimed in that suit, and all the costs. At that time *Fairfield* was a bankrupt. In 1806, *Burnham* complained to *Fairfield* of the impropriety of his conduct in giving a partnership note for his private debt, three months after their connection had ceased. But it also appeared that in 1811, *Burnham* voluntarily paid part of the sum due on the note now in suit.

The counsel for the defendant hereupon contended that the note was given without consideration. On this point the jury were instructed that if the defendant believed that the note of *Nov.* 12, 1799, was given for a debt due from the company, and under that impression gave the note in question for one half of it, then this last note was destitute of consideration and therefore void, no such debt being due the testator;—but that if the note in question was given by the defendant with the knowledge that *Fairfield* had unlawfully used his name, and to avoid the risk of a trial, in which he might not be able to prove that the testator knew that the partnership was dissolved, and as a prudent compromise of a doubtful claim, these circumstances formed a sufficient consideration for the note.

The jury returned a verdict for the plaintiff, which was taken subject to the opinion of the court.

*Emery*, for the defendant, argued that the first note being wholly void as against *Burnham*, it could form no valid consideration for the second. The essential ingredient of legal obligation was wanting equally in both instances. Nor is it fortified by the partial payment ; for this, at most, is nothing more than a part performance of a contract not legally binding; which, it is settled, does not preclude the party from his defence against any future claim grounded on the same contract.

Its very foundation, moreover, was in fraud; and it ought not to stand on better ground than transactions clearly usurious. *Pierce v. Jackson* 6 *Mass.* 242.

He also objected that this action could not be maintained, under the statute, in the name of the indorsee, without evidence of a special promise to him ; which did not appear in the case.

*Willis*, for the plaintiff. As the jury have found that there was no want of knowledge of the facts on the part of the defendant, and no bad faith in the plaintiff, the case stands simply upon the point of consideration. And the evidence shews both a loss to the plaintiff, in the expenses of his suit, and a gain to the defendant, in terminating a contest the issue of which at best was doubtful, and the continuance of which would certainly have been expensive. The *quantum* of consideration the law does not descend to weigh. It is enough if there be any loss, trouble, or prejudice to the promissee; or any the least gain or actual benefit to the promissor. 1 *Dane's Abr.* 89, 108, 109, 116, 125. 2 *Com. Dig.* 334. *Pillans v. Van Mierop* 3 *Burr* 1671. *Eaton v. Taylor* 10 *Mass.* 54. 2 *Bl. Com.* 445.

And, for aught appearing in the case, *Fairfield* was authorized to make use of the partnership name. There may have been a subsisting privity between the late partners; and from the subsequent adjustment of part by *Burnham*, such a relation between them was fairly to be inferred. But if he knew that there was fraud in his former partner, but that he could not prove it, the case was sufficiently fair for a new contract.

The question respecting the admissibility of the depositions not being decided by the court, the arguments to that point are omitted.

MELLEN C. J. delivered the opinion of the court, as follows:

As the note declared on was payable on demand, and was not indorsed to the plaintiff until several years had elapsed after it was given, it is perfectly clear, that it is liable to the same objections and equities in a suit by the indorsee as it would be if the executrix of the promissee were the plaintiff. We pass over the objection made as to the admissibility of the witnesses named in the report, and proceed immediately to consider that which is predicated on the want of consideration. And, here, it is proper to observe that the ground on which the objection is now placed, was not taken by the defendant's counsel at the trial; and, amidst a mass of evidence and some confusion in the manner in which it was introduced, the point on which we now decide the cause, seems to have escaped all serious attention.

The original note, for half of which the note in question was given, was made and signed after *Fairfield* and *Burnham* had dissolved partnership ; and when it was given, *Fairfield* informed *Stearns*, the promissee, of that fact; *Stearns*, therefore, knew as well as *Fairfield*, that the latter had no legal authority to bind *Burnham*, by signing the note in the name of the firm ; it was given for a debt due from *Fairfield* only ; it seems from these circumstances to have been a fraud in *Fairfield* to give the note and a fraud in *Stearns* to receive it ; the object must have been to cheat *Burnham*, and to a certain extent, it has had that effect, because he has paid a portion of it. But it has been contended that though the original note was given under these circumstances, still that as they were known to *Burnham* when he settled the action against him and *Fairfield*, by giving the note now in suit ; being for half the amount of the first note, and for the costs of the suit, he must be bound by it ; as it was a compromise of a doubtful action and demand, made voluntarily and with a perfect knowledge of facts; and this, it is said, is a good and legal consideration. This argument would be sound and satisfactory, in a

case not poisoned by fraud on the part of the person asserting the doubtful claim. It is not denied that a compromise of such a suit, where both parties are lawfully pursuing what they consider honestly to be their rights, constitutes a good and legal consideration ; but such a compromise has no resemblance to the one relied on as proof of the consideration of the note in question. In the case before us nothing was due to *Stearns* when this note was given, and *Stearns* knew it ; that is, that no claim existed against *Burnham*, except what was founded in fraud and collusion between him and *Fairfield*. The note was given at a time when a suit was pressing him, and *Fairfield* was a bankrupt : an undue advantage was taken of *Burnham's* situation, although he was conusant of all the facts ; but without pursuing this idea, the fatal objection to the action is, that the the plaintiff's claim is founded on a fraudulent transaction ; and if we should sustain and sanction it, it would render the fraud successful ; whereas it is the duty of courts of justice in every instance in their power to protect the innocent by defeating the stratagems of iniquity. Under these circumstances, we are all of opinion that the verdict must be set aside and a new trial granted.